# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JACQUELINE BALSEWICZ**
            **Plaintiff,**

    **v.**                                           **Case No. 17-C-0926**

**NANCY A. BERRYHILL,**
**Acting Commissioner of the Social Security Administration**
            **Defendant.**

---

## DECISION AND ORDER

Plaintiff Jacqueline Balsewicz seeks judicial review of the denial of her applications for social security disability benefits.  Plaintiff alleged that she could not work due to back, shoulder, knee, wrist, and hip pain, but the Administrative Law Judge ("ALJ") assigned to the case concluded that plaintiff retained the ability to perform the full range of "light" work, that plaintiff's past job was light as she performed it, and that she could still do that job.  Plaintiff argues that the past job was actually "medium" level work, beyond her capacity.  She further argues that the ALJ erred in discounting the opinion of an examining consultant, and that the ALJ failed to consider her good work history in evaluating the credibility of her statements.  Finding no reversible error, I affirm the ALJ's decision.

## I.  APPLICABLE LEGAL STANDARDS

### A.      Disability Standard

In determining disability, the ALJ applies a sequential, five-step test.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At step one, the ALJ asks whether the claimant is currently working, i.e., engaging in "substantial gainful activity" ("SGA").  If not, he proceeds to step two,

determining whether the claimant suffers from any "severe" impairments. An impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the ALJ determines whether any of those severe impairments meet or medically equal the requirements of one of the conclusively disabling impairments listed in the regulations (the "Listings").

If the impairments do not meet or equal a Listing, the ALJ proceeds to step four, determining whether the claimant has the residual functional capacity ("RFC") to return to her past relevant work. RFC is the most an individual can still do, on a regular and continuing basis, despite her impairments. SSR 96-8p, 1996  SSR LEXIS 5, at *5. RFC is often expressed, at least in part, in terms of an exertional category: "sedentary," "light," "medium" and "heavy" work. As is pertinent here,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." Id. § 404.1567(c).

At step four, a claimant will be deemed "not disabled" if it is determined that she retains the RFC to perform: (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61, 1982 SSR LEXIS 31, at *4. In evaluating a job as performed, the ALJ will often rely on the claimant's reports and statements regarding how she did the job. In evaluating the job generally, the ALJ will often rely on the generic job descriptions contained in the Dictionary of Occupational Titles ("DOT").

2

Id. at *5. Some jobs "have significant elements of two or more occupations and, as such, have no counterpart in the DOT." Id. When dealing with one of these so-called "composite jobs," the ALJ will focus on the job as performed. See, e.g., Michalski v. Berryhill, No. 16-C-1590, 2017 U.S. Dist. LEXIS 149090, at *17 (E.D. Wis. Sept. 14, 2017) (discussing composite jobs).

Finally, if the claimant cannot perform her past work, the ALJ will proceed to the fifth and final step, determining whether she can, given her age, education, work experience, and RFC, make the adjustment to other work in the national economy. The claimant bears the burden of presenting evidence at steps one through four, but if she reaches step five the burden shifts to the Commissioner to show that the claimant can make the adjustment to other work. The Commissioner may carry this burden by relying on the Medical-Vocational Guidelines (i.e., the "Grid"), a chart that classifies a person as disabled or not disabled based on her age, education, work experience and exertional ability, or by summoning a vocational expert ("VE") to offer an opinion on other jobs the claimant can do despite her limitations. E.g., McQuestion v. Astrue, 629 F. Supp. 2d 887, 892 (E.D. Wis. 2009).

## B.    Standard of Review

The reviewing court does not redetermine disability but rather decides whether the ALJ's decision applies the correct legal standards and is supported by substantial evidence. Summers v. Berryhill, 864 F.3d 523, 526 (7th Cir. 2017). Legal conclusions are reviewed de novo, but factual findings are reviewed deferentially. Casey v. Berryhill, 853 F.3d 322, 326 (7th Cir. 2017). The court will not in reviewing the ALJ's findings re-weigh the evidence or substitute its judgment for that of the ALJ. Summers, 864 F.3d at 526. Findings supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion will be upheld. Moreno v. Berryhill, 882 F.3d 722, 728 (7th Cir. 2018). The ALJ must provide

3

an accurate and logical bridge between the evidence and his conclusions, but he is not required to address in writing every piece of evidence and testimony in the record. Murphy v. Colvin, 759 F.3d 811, 815 (7th Cir. 2014).

## II. FACTS AND BACKGROUND

### A. Plaintiff's Application and Supporting Materials

Plaintiff applied for disability insurance benefits in February 2013 and supplemental security income in March 2013, alleging in both applications a disability onset date of June 15, 2012. (Tr. at 18, 189, 1995.) In a disability report, plaintiff indicated that she worked as a general laborer from 1990 to 2010. (Tr. at 213.) She reported that in that job: "I would run a machine, pack cans in boxes, stack them and print labels for cans and bottles." (Tr. at 214.) "I would lift cases of cans weighing 10-15 pounds and did about 200 cases a day." (Tr. at 214.) She indicated that the heaviest weight she lifted was 20 pounds, and the weight she "frequently" lifted (1/3 to 2/3 of the day) was 10 pounds. (Tr. at 214.) In doing this job, she would walk eight hours, stand eight hours, sit 0.5 hours, and stoop (bend down and forward at the waist) four hours. (Tr. at 214.)

In a function report, plaintiff indicated that she prepared simple meals, performed household chores like cleaning and laundry, used public transportation, shopped in stores, and handled her own finances. (Tr. at 221-22.) She further reported hobbies of watching TV and knitting. (Tr. at 223.) She indicated that her back, shoulder, and hip impairments limited her ability to lift, bend, stand, reach, walk, sit, kneel, climb stairs, and understand and complete tasks. She estimated that she could walk one-half to one block before she had to rest for 20 minutes. (Tr. at 224.) She further reported using a knee brace because her leg gave way. (Tr.

at 225.)

## B.    Agency Review

The agency arranged for a consultative examination with Nebojsa Stevanovic, M.D., in October 2013.[1]  Plaintiff complained of low back pain for 30 years, which got worse in 2010. "She retired and developed bulging discs." (Tr. at 328.)  She reported pain intensity of 5/10, 8/10 with standing.  She also reported some right leg weakness, knee instability, and shoulder pain with decreased range of motion.  She indicated that she could lift a gallon of milk but not carry it far.  She reported that she could stand for 10 minutes, sit for 10 minutes, and walk half a block before developing shortness of breath.  Her medical history included a shoulder surgery in 2010 and right knee arthroscopic surgery in 2007.  (Tr. at 328.)  On exam, she displayed normal range of motion of the neck, decreased lumbar range of motion, and mild tenderness of the paravertebral muscles.  Upper and lower extremities had normal range of motion except for the left shoulder, which had decreased abduction and extension; she could not reach overhead with her left arm.  Gait and station were normal, and she used no assistive devices. She had positive straight leg raising test in the left leg, but negative on the right.  Sensory responses were normal except decreased vibration in the left foot.  Muscle tone and strength were 5/5 in all four extremities.  Station, balance, and coordination were good, as was her ability to arise from the chair and get on and off the examining table.  She could walk on her heels, toes, and tandem walk.  Grip strength, fine finger dexterity, and gross manual dexterity were good.  "There is no need to change position or posture of the body during the examination." (Tr. at 329.)  Dr. Stevanovic concluded: "The claimant's ability to perform work-

_____

[1]The agency also collected plaintiff's medical records.  The record contains no opinion from any treating source.

5

related physical activities such as sitting, standing, walking, lifting, carrying, and handling objects is moderately decreased because of back pain." (Tr. at 329.)

The agency denied the applications initially on November 5, 2013 (Tr. at 117) based on the review of Antonio Medina, M.D., who concluded that plaintiff could perform medium work with postural limitations: frequent climbing of ramps/stairs, no climbing of ladders/ropes/scaffolds, frequent balancing, occasional stooping and crouching, and frequent kneeling/crawling (Tr. at 84-85). Plaintiff sought reconsideration (Tr. at 122),[2] but the agency maintained the denial on February 26, 2014 (Tr. at 123) based on the review of Pat Chan, M.D., who concluded that plaintiff could perform light work with no postural or other limitations (Tr. at 104-05). Plaintiff then requested a hearing before an ALJ. (Tr. at 141.)

## C. Hearing

On December 18, 2015, plaintiff appeared with counsel for her hearing before the ALJ. The ALJ also summoned a VE. (Tr. at 33-34.)

### 1. Plaintiff

The ALJ asked plaintiff about the various impairments she alleged. Plaintiff testified that she experienced back pain, worse since 2012 or 2013, for which she received pain medication, which helped; her doctors wanted to do injections, but she was afraid of needles and unsure they would help. (Tr. at 44-45.) She denied side effects from her medications. (Tr. at 55.) She indicated that her back hurt if she stood or sat for more than 15-20 minutes. (Tr. at 55.)

---

[2]In reports filed with her reconsideration request, plaintiff indicated that her condition had worsened. (Tr. at 227.) She reported that it was hard to walk longer than ½ block and stand still for more than five minutes. (Tr. at 234.) In a physical activities addendum, she indicated that she could sit for 20 minutes, stand for 10 minutes, and walk "very little." She reported that her doctor had limited her to lifting 20 pounds. (Tr. at 240.)

Plaintiff denied any treatment for her hips. (Tr. at 46.) She had surgery done on her right knee in 2007 but received no treatment since then. (Tr. at 46-47.) She also had surgery on her left shoulder in 2010, receiving physical therapy and medication thereafter. (Tr. at 47.) She further reported breaking her wrist in June 2015, with continued pain and trouble lifting. (Tr. at 47-48.) She testified that she had been diagnosed with anxiety and prescribed Lorazepam by her primary doctor, which she took off and on; she received no other mental health treatment. (Tr. at 52-53.)

Plaintiff testified that she lived alone in an apartment and got around by public transportation. (Tr. at 48.) In her previous submissions, she reported shopping, doing household chores, and handling her own money, which she indicated was accurate; she also cared for her dog. (Tr. at 48-49.) She spent no more than an hour at a time doing household chores. (Tr. at 55.) She tried to get out of the house at least twice a week, walking to Speedway about two blocks away, which took about 20 minutes. (Tr. at 56.) She indicated that she could walk about ½ block before she had to stop and rest. (Tr. at 57.) She said that she could not carry anything over 15 pounds. She spent her time in a typical day doing small chores around the house or talking to other people in her apartment building community room. (Tr. at 58.)

Plaintiff testified that she last worked in 2011 as a silk screener/printer at a chemical plant. That job ended when she got upset and quit after her supervisor tried to add to her duties. She had worked there for 19 years. She did not try to get a different job after she left. (Tr. at 50.) She testified that the most she lifted in her past job was 25 pounds (box and cans). (Tr. at 50, 52.) She was on her feet all day doing that job. She was primarily a silk screener but at times she performed packing duties. The job title was general labor. (Tr. at 51.) She

elaborated that the job was mostly tending a machine when she was printing, but she also packed and unpacked boxes, lifting 20 ounce and 16 ounce cans. (Tr. at 61.) She would pull a forklift with the boxes up to her machine, take a box off, open it, take out a can, put it on the machine, and take it off. She carried whole boxes full of these cans. (Tr. at 63.) She spent most of her time printing. (Tr. at 62.)

**2.    VE**

The VE classified plaintiff's past job as a screen printing machine operator (DOT # 652.686-038, unskilled, medium work) and hand packager (DOT # 920.587-018, unskilled, medium work). (Tr. at 63-63.) The ALJ then asked a hypothetical question, assuming a person of plaintiff's age, education, and work experience, able to perform medium work as defined in the regulations, but limited to no more than frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing, kneeling, and crawling; and occasional stooping and crouching. (Tr. at 64.) The VE testified that such a person could not perform plaintiff's past job because it involved frequent stooping. (Tr. at 66.)

The ALJ then reviewed the job description from plaintiff's pre-hearing disability report, in which plaintiff said she lifted no more than 20 pounds. (Tr. at 66-67.) The VE testified that, if that description were used, the job would be light as performed. (Tr. at 67.) The ALJ then asked a second hypothetical, assuming a person limited to light work, with no more than frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing, kneeling, and crawling; and occasional stooping and crouching. The VE testified that the past work could not be done under this hypothetical because of the limit on stooping. (Tr. at 68-69.) Finally, if the person were simply limited to light work (without the additional

8

limitations), the person <u>could</u> perform the past work.[3]  (Tr. at 69.)  Plaintiff's counsel asked the VE no questions.  (Tr. at 72.)

## D.    ALJ's Decision

On March 25, 2016, the ALJ issued an unfavorable decision.  (Tr. at 15.)  At step one of the evaluation process, the ALJ determined that plaintiff had not engaged in substantial gainful activity since June 25, 2012, the alleged onset date.  At step two, he found that plaintiff had two severe impairments: disorders of the back and residuals of left shoulder surgery.  (Tr. at 20.)  The record contained references to a right wrist injury, right knee surgery, and anxiety, but the ALJ found these impairments non-severe.  (Tr. at 20-21.)  Plaintiff also complained of breathing problems and a right hip disorder, but the ALJ found both to be non-medically determinable impairments.  (Tr. at 22.)

At step three, the ALJ determined that plaintiff's shoulder disorder did not meet Listing 1.02(B) because she maintained the ability to perform fine and gross movements effectively. (Tr. at 22.)  He concluded that her back impairment did not meet Listing 1.04, as there was no evidence of compromise of the spinal cord or a nerve root.  (Tr. at 22-23.)

Prior to step four, the ALJ determined that plaintiff retained the RFC to perform the full range of light work.  In making this finding he considered plaintiff's alleged symptoms and the medical opinion evidence.  (Tr. at 23.)

The ALJ acknowledged the required two-step process for symptom evaluation, under which he had to first determine whether plaintiff had an impairment that could reasonably be

---

[3]Further limitations of no overhead reaching with the left upper extremity and no more than frequent handling and fingering with the right upper extremity would not change the answer.  (Tr. at 69.)  A limitation to occasional handling and fingering with the right would preclude the job.  (Tr. at 70.)

expected to produce her pain and other symptoms. Second, once such an impairment had been established, he had to evaluate the intensity, persistence, and limiting effects of plaintiff's symptoms to determine the extent to which they limited her functioning. (Tr. at 23, citing SSR 96-7p.)

Plaintiff alleged disability due to back problems and arthritis. In her initial report, she complained of chronic pain and difficulty lifting, standing, walking, and bending. She also noted memory problems and difficulty tolerating stress. Plaintiff reported that she was limited to walking up to one block before she needed to rest for 20 minutes. At the reconsideration stage, she complained of a worsening condition, indicating she had trouble walking even half a block. She reported that in an eight-hour day she could sit for 20 minutes, stand for 10 minutes, and walk short distances. She also reported hand pain and a maximum ability to lift 10 pounds. (Tr. at 23.) At the hearing, plaintiff complained of chronic back, knee, and shoulder pain. She also testified that she fractured her right wrist in June 2015, with residual pain and trouble lifting. She indicated that she had difficulty sitting for long periods due to back pain and was limited to lifting 15 pounds. (Tr. at 24.) The ALJ found that while plaintiff's impairments could reasonably be expected to produce the alleged symptoms, her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 24.)

After reviewing the medical evidence (Tr. at 24-25), the ALJ noted that the objective imaging studies of plaintiff's back, left shoulder, and right knee were relatively unimpressive and did not provide strong support for the degree of alleged limitation. (Tr. at 25-26.) Further, while the physical exams provided evidence of back pain, plaintiff received very conservative treatment, including medication. She declined injections due to fear of needles, but physical

10

exams generally revealed a functional gait and good strength in the lower extremities. Plaintiff at times complained of left shoulder pain, but her most recent exam revealed good range of motion with no significant pain. Finally, plaintiff's daily activities suggested that she remained capable of light work, as she testified she spent her days performing household chores and socializing in her apartment building's community room; she also used public transportation and cared for her dog.[4] (Tr. at 26.) The ALJ concluded that plaintiff's "daily activities considered in combination with the mild imaging studies and the very conservative treatment strongly suggests that [she] has maintained the ability to perform the full range of light work." (Tr. at 26.)

As for the opinion evidence, the ALJ first considered the reports from the agency medical consultants. In November 2013, Dr. Medina opined that plaintiff could perform medium work with additional postural limitations. The ALJ gave his opinion limited weight, as the newer medical evidence showed continued complaints of back pain and suggested that plaintiff would have difficulty sustaining the physical demands of more than light work. In February 2014, Dr. Chan opined that plaintiff could perform the full range of light work. The ALJ gave this opinion great weight, as Dr. Chan thoroughly considered plaintiff's subjective pain complaints but also noted the relatively mild objective findings. Even though plaintiff had difficulty raising her left arm at the consultative exam, subsequent records showed that she regained full range of motion. (Tr. at 26.)

---

[4]The ALJ noted that plaintiff "had an impressive work history that showed 17 years of substantial gainful activity from 1994 through 2011." (Tr. at 25.) However, plaintiff "testified that she left her job because her boss wanted to add additional responsibilities, not because she was unable to perform her already existing job requirements." (Tr. at 25, emphasis in original.)

The ALJ gave limited weight to Dr. Stevanovic's opinions, as they were vague. He noted that plaintiff's ability to sit, stand, walk, lift, carry and handle objects was "moderately decreased" because of back pain, but he did not give any assessment as to what plaintiff could do. However, the agency consultants later reviewed Dr. Stevanovic's report and found that plaintiff could perform light work at the very least. (Tr. at 26.)

At step four, the ALJ found plaintiff capable of performing her past relevant work as a screen printing machine operator and hand packager. The ALJ noted that plaintiff worked as a laborer for the same company from 1990 through 2011. Based on plaintiff's reports and testimony at the hearing, the VE classified this job as a "screen printing machine operator" but noted that it also involved aspects of the work of a "hand packager." The VE testified that both jobs were unskilled and medium, generally. The ALJ concluded that plaintiff performed this composite job long enough at the substantial gainful activity level for it to constitute past relevant work. (Tr. at 27.)

The ALJ then addressed whether plaintiff actually performed this job at the medium or light level. Originally, plaintiff reported that the maximum amount she was required to lift was 20 pounds, 10 pounds frequently. More specifically, she stated that she would lift cases of cans weighing 10-15 pounds, about 200 cases per day. However, at the hearing, she testified that she was actually required to lift up to 25 pounds. The ALJ gave more weight to the original report and found the work actually performed at the light level. The ALJ acknowledged that the later testimony was given under oath and that the earlier statement was recorded by a social security representative and not signed by plaintiff. But the earlier statement was documented in the regular fashion by the agency, and for several reasons the ALJ found it entitled to greater weight. First, the earlier statement was not just a check-box assessment, but rather a specific

12

statement about how heavy the cases of cans were; plaintiff's degree of specificity also suggested she knew how much weight she was required to lift. Second, her assessment in the earlier report did not suggest that the weight bordered right at 20 pounds and could have easily exceeded that amount; rather, she estimated 10-15 pounds. Third, the report was created in March 2013, much closer in time to her actual work history, when she would logically be in a better position to remember the facts clearly. Fourth, the report was created at a time when she was likely unaware of the significant differences between 20 and 25 pounds under the regulations. (Tr. at 27.)

For all of these reasons, the ALJ relied on the original report and found the past relevant work was performed at the light level. (Tr. at 27-28.) This was true regardless of whether the work was viewed as a screen printing machine operator, hand packager, or as a composite job combining aspects of both jobs. The VE testified that both jobs are medium as generally performed (according to the DOT), but were light work as performed by plaintiff based on her statement in the report (although medium as described in her testimony). (Tr. at 28.)

In comparing plaintiff's RFC with the physical and mental demands of this work, the ALJ found that plaintiff was able to perform it as she actually performed it, although not as generally performed. The VE testified that with a 20-pound maximum lifting requirement, a person with a light work limitation could perform plaintiff's past relevant work as plaintiff actually performed it. The ALJ accordingly found plaintiff not disabled. (Tr. at 28.)

On May 16, 2017, the Appeals Council denied plaintiff's request to review the ALJ's decision. (Tr. at 1.) This action followed.

# III. DISCUSSION

## A.    Step Four Determination

As indicated, at step four of the evaluation process, the ALJ decides whether the claimant can still perform her past jobs, either as she actually did them or as they are generally performed in the economy.  In the present case, the VE testified that plaintiff's laborer position (which was actually a composite of two different jobs) was medium as generally performed. The record contained conflicting evidence regarding the job as plaintiff did it; in her disability report, she reported lifting 10-20 pounds, consistent with light work, but at the hearing she testified to lifting up to 25 pounds, consistent with medium work.[5]  The ALJ adopted the pre-hearing report description over plaintiff's testimony, finding that plaintiff actually performed the job at the light level.  The ALJ further found plaintiff capable of the full range of light work and thus able to perform this job as she did it.

Plaintiff argues that the ALJ erred in discounting her testimony regarding how much she lifted.  (Pl.'s Br. at 9-11.)  She further argues that, even under the job description set forth in the disability report, her job was medium rather than light.  (Pl.'s Br. at 5-8, 12-13.)  She concludes that the ALJ's error was harmful, and that the most appropriate disposition is reversal and remand for an award of benefits, because a person of her age, education, and experience limited to light work and unable to perform her past jobs would be deemed disabled at step five under Grid Rule 201.01.  (Pl.'s Br. at 8-9.)  Because I find no error on either point, I need not discuss the remedy.

---

[5]As indicated above, light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, while medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. § 404.1567(b) & (c).

### 1.    Report v. Testimony

Plaintiff argues that the ALJ engaged in speculation in crediting the report over her testimony (Pl.'s Br. at 11), but his decision contains specific reasons for this finding, grounded in the evidence. The ALJ acknowledged that, unlike the pre-hearing report, the testimony was given under oath. However, he noted that the report was documented in the regular fashion by the agency, and he provided several reasons for giving it greater weight: (1) the report included a specific statement about how heavy the cases of cans were, not just a check-box assessment; (2) the report said the cases weighed 10-15 pounds, rather than a weight bordering right at 20 pounds, which could have easily exceeded that amount; (3) the report was prepared much closer in time to her actual performance of the work, when she would be in a better position to remember what she did; and (4) the report was created at a time when plaintiff was likely unaware of the significance of lifting 20 v. 25 pounds under the agency's regulations. (Tr. at 27.)

Plaintiff notes that the disability report did include a pre-printed question regarding the heaviest weight she lifted (Pl.'s Br. at 11), but she fails to explain how this discredits the ALJ's decision; after all, plaintiff answered that question with 20 pounds, which is consistent with light work. Plaintiff further contends that there is no basis for assuming that the lifting required of a chemical packaging plant worker would not exceed 20 pounds. But the only evidence in the record that plaintiff had to lift more than that came from her hearing testimony. She now cites the company's website regarding the different products it packages (Pl.'s Br. at 11), as well as a website estimating how much a case of 16 ounce water bottles weighs (Pl.'s Br. at 10 n.2), but this evidence is not in the record. See Eads v. Sec'y of Health & Human Servs., 983 F.2d 815, 817 (7th Cir. 1993) (noting that the correctness of an ALJ's decision "depends on the

evidence that was before him," and that he "cannot be faulted for having failed to weigh evidence never presented to him"). Finally, plaintiff notes that while the disability report was prepared closer in time to the job it was a generalized statement, lacking the detail of a "work function report" or of her hearing testimony. (Pl.'s Br. at 11.) On the critical issue, however, the report contained a very specific statement regarding how much plaintiff had to lift. Plaintiff fails to demonstrate that it was unreasonable for the ALJ to rely on the report.[6]

Ultimately, plaintiff's argument amounts to a mere disagreement with the manner in which the ALJ resolved this conflict in the evidence, which is not a basis for reversal. See, e.g., Young v. Barnhart, 362 F.3d 995,1001 (7th Cir. 2004); Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003). She fails to explain how the decision otherwise failed to comport with the requirements of SSR 82-61 or any other regulation.

### 2. Medium v. Light Work

Plaintiff argues that, even adopting the disability report's description, her past job should be classified as medium. Specifically, she contends that the lifting, stooping, and standing/walking frequency referenced in the report pushes the job into the medium category. (Pl.'s Br. at 5-8, 12-13.)

### a. Lifting

In the pre-hearing report, plaintiff reported lifting 10-15 pound cases about 200 times per day. (Tr. at 214.) Plaintiff notes that, according to the DOT, light work involves: "Exerting up

_____

[6]Plaintiff has never denied that she described the job to the social security representative as recorded in the disability report. In her brief in this case, she indicates that her testimony "modified" her previous description of the past job. (Pl.'s Br. at 9.) She does not address the ALJ's observation that this modification came at a time when she was likely aware of the significance of lifting 25 pounds.

16

to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects." Medium work involves: "Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects."[7] Plaintiff contends that, under these definitions, lifting 10-15 pounds 200 times per day would make the job medium. (Pl.'s Br. at 6.)

The ALJ relied on the VE's testimony that as described in the pre-hearing report this job was light, and that a person with a 20 pound lifting maximum and light work limitation could do the job as plaintiff actually performed it. (Tr. at 28, 67.) Plaintiff's counsel did not question the VE on this (or any other) aspect of his testimony. (Tr. at 72.) The ALJ was accordingly permitted to rely on it.[8] See Liskowitz v. Astrue, 559 F.3d 736, 744 (7th Cir. 2009); see also Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the Dictionary's – for the Dictionary, after all, just records other unexplained conclusions and is not even subject to cross-examination.").

While the ALJ is required, pursuant to SSR 00-4p, 2000 SSR LEXIS 8, to ask the VE if his testimony is consistent with the DOT and to obtain a reasonable explanation for any

---

[7]https://occupationalinfo.org/appendxc_1.html#STRENGTH.

[8]In a pre-hearing memorandum, plaintiff's lawyer appeared to concede that the disability report described light work; counsel argued that the report contained a mere estimate of the amount plaintiff lifted, and that he expected plaintiff to testify that she was required to lift more than 20 pounds, consistent with medium work. (Tr. at 266.) Counsel said much the same during an opening statement at the hearing. (Tr. at 39.) At no time did counsel argue the job was medium under the disability report's description. In her reply brief, plaintiff notes that the VE did not testify to, or the ALJ make any specific finding on, this issue. (Pl.'s Rep. Br. at 3.) No one asked them to.

conflicts, where no conflict is identified at the hearing the ALJ is required to address the issue sua sponte only if the conflict is so obvious that the ALJ should have picked up on it without any assistance. Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009). Plaintiff fails to demonstrate any such error in this case.

First, plaintiff cites no authority requiring the ALJ to use the DOT's full definition of medium work, rather than the agency's regulation (i.e., lifting no more than 50 pounds at a time, with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c)). While the agency has endorsed the DOT as a vocational source in evaluating a claimant's ability to perform past work, see 20 C.F.R. §§ 404.1560(b)(2), 404.1566(d), and indicated that its exertional definitions match those found in the Dictionary, see 20 C.F.R. § 404.1567, "no statute or regulation gives [the DOT] binding force." Donahue, 279 F.3d at 445.

Second, even if the DOT's definitions should be used, plaintiff fails to demonstrate an obvious conflict. Her argument appears to rest on the assumption that she "constantly" lifted/carried 10-15 pounds. (See Pl.'s Br. at 6-7; Pl.'s Rep. Br. at 3.) However, the disability report does not say that. While the report does not specify how much time she spent lifting and carrying cases, given the description of her job duties set forth in the report, it appears the lifting/carrying component was brief, with most of her time spent running the machine/working on the cans within the cases.[9] (Tr. at 214.) This is consistent with her testimony at the hearing, offered in response to the VE's request for more detail (Tr. at 60), that she spent most of her time printing/tending her machine, with "very short periods" opening and packing/unpacking

---

[9]The report further indicates that the weight she frequently lifted was 10 pounds. (Tr. at 214.)

boxes.[10] (Tr. at 62.) Given the evidence that was before the ALJ, plaintiff fails to demonstrate that the ALJ committed legal error by failing to sua sponte reject the VE's testimony that plaintiff's past job, as described in the report, was light.

### b.   Stooping

In the disability report, plaintiff indicated that her job required her to stoop four hours per day. (Tr. at 214.) Plaintiff notes that, under SSR 83-10, "The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping." 1983 SSR LEXIS 30, at * 14.  SSR 85-15 provides:

> If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. However, because of the lifting required for most medium, heavy, and very heavy jobs, a person must be able to stoop frequently (from one-third to two-thirds of the time)[.]

1985 SSR LEXIS 20, at *18.  Based on these rulings, plaintiff contends that, because her job required four hours (i.e., frequent) stooping, it must be classified as medium.  (Pl.'s Br. at 7.)

The Rulings do not require this conclusion.  SSR 83-10 says that the majority of light jobs involve occasional stooping, meaning that a minority of such jobs – apparently including

---

[10]In reply, plaintiff notes that under the Chenery doctrine a decision cannot be upheld based on an analysis the ALJ never conducted. (Pl.'s Rep. Br. at 3.)  But because plaintiff did not raise this argument at the hearing, it is her burden now to show an obvious conflict; the Commissioner and the court cannot address such an argument without evaluating the evidence upon which it is based.  See, e.g., Anderson v. Colvin, No. 13-C-0788, 2014 U.S. Dist. LEXIS 151646, at *88 (E.D. Wis. Oct. 25, 2014) (noting that a claimant cannot accuse the ALJ of skipping evidence, then raise Chenery as a bar to any consideration by the Commissioner and the court as to the importance of that evidence; see also Brandenburg v. Colvin, No. 14-CV-835, 2015 U.S. Dist. LEXIS 105190, at *24-25 (E.D. Wis. Aug. 11, 2015) (Griesbach, J.) (noting problems with applying Chenery to arguments never presented to the ALJ).

plaintiff's laborer job – require more frequent stooping.[11]  Moreover, the ALJ found no limitation

in plaintiff's ability to stoop.[12]  His hypothetical questions to the VE showed that he did not

assume any postural limitations within the full range of light work.  (See Tr. at 69.)  The VE

testified that a person capable of the full range of light work could do plaintiff's past job, but

adding a further limitation to occasional stooping would change the result.  (Tr. at 69.)  Again,

the ALJ was permitted to rely on the VE's testimony that this job was light as performed, and

that plaintiff could still do it.

### c.   Standing/Walking

Finally, plaintiff contends that, according to the report, she had to be on her feet all day,

which also exceeds the limits of light work.  (Pl.'s Br. at 12-13.)  She cites 20 C.F.R. §

404.1567(b), which states that light work "requires a good deal of walking or standing," and

SSR 83-10, which indicates that "the full range of light work requires standing or walking, off

and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur

intermittently during the remaining time."  1983 SSR LEXIS 30, at *14.

The report does not support plaintiff's contention that she was on her feet all day.

Plaintiff reported that in performing this job she would walk eight hours, stand eight hours, and

sit 0.5 hours.  (Tr. at 214.)  Further, the Ruling plaintiff cites does not support her claim that the

---

[11]In reply, plaintiff notes that the VE did not testify to this, nor did the ALJ make any finding with respect to this issue.  (Pl.'s Rep. Br. at 2.)  Again, no one asked them to.  And the regulations presume that some light jobs will involve frequent stooping, so the issue was not so obvious that the ALJ should have addressed it anyway.

[12]In reply, plaintiff says this is a distraction, as the critical issue is not whether the RFC restricted her stooping but whether her past work was properly classified as light.  (Pl.'s Rep. Br. at 2.)  As discussed in the text, no regulation or Ruling supports the claim that frequent stooping always makes a job medium.

intermittent sitting involved in a light job must equal two hours.  As the Ruling itself states, these are approximations.  Finally, the ALJ reasonably credited the VE's testimony that a person capable of the full range of light work could perform this job as described in the hearing report.

## B.    Dr. Stevanovic's Report

In determining RFC, the ALJ must consider all medical opinions in the record.  Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013).  The regulations set forth a number of factors for evaluating such opinions, including the support offered by the source for the opinion; the consistency of the opinion with the record as a whole; the source's specialization, if any; and the source's understanding of social security disability programs and their evidentiary requirements.  20 C.F.R. § 404.1527(c)(3)-(6).  Generally, more weight is given to the medical opinion of a source who has examined the claimant than to the opinion of a medical source who has not.  Id. § 404.1527(c)(1).  Opinions from the claimant's treating providers receive even more deference, as they are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments; such opinions will, if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in your case record, be given "controlling weight."  Id. § 404.1527(c)(2).

The record here contains no medical opinion from any treating source.  It does contain the report of an examining consultant, Dr. Stevanovic, as well as the reports of two reviewing consultants, Dr. Medina and Chan.  The ALJ considered each of these reports, giving great weight to Dr. Chan's opinion that plaintiff could perform the full range of light work, but limited weight to the other reports.  (Tr. at 26.)  The ALJ discussed Dr. Stevanovic's exam findings in detail (Tr. at 24-25), but discounted as vague the doctor's conclusion that plaintiff's ability to

sit, stand, walk, lift, carry and handle objects was "moderately decreased" because of back pain. The ALJ noted that Dr. Stevanovic did not give any assessment as to what plaintiff could do. However, Drs. Medina and Chan later reviewed Dr. Stevanovic's assessment and found that plaintiff could perform light work at the very least. (Tr. at 26.)

Plaintiff argues that the ALJ gave no "obvious consideration" to Dr. Stevanovic's status as an examining source, with expertise in disability evaluation. (Pl.'s Br. at 15-16; Pl.'s Rep. Br. at 4). The ALJ noted that Dr. Stevanovic performed a consultative examination for the agency and thoroughly discussed his exam findings. (Tr. at 24-25.) Plaintiff fails to explain why more explicit discussion of this portion of the regulation was required. While examining sources are generally given more weight, the regulations do not say that their opinions must always be credited. Not even treating sources receive such deference. See Smith v. Apfel, 231 F.3d 433, 440 (7th Cir. 2000) ("Nothing in the regulatory scheme or the precedent of this court mandates that the opinion of a treating physician always be accepted over that of a consulting physician, only that the relative merits of both be duly considered.") (internal quote marks omitted).[13]

Plaintiff further argues that Dr. Stevanovic described limitations greater than those set forth in the ALJ's RFC for light work (Pl.'s Br. at 15), but she fails to explain how that is so. Dr. Stevanovic made no specific recommendations. See 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will

---

[13]Plaintiff discusses the importance of consultative exams, which the agency purchases when the record is insufficient to evaluate the claim. (Pl.'s Br. at 16; Pl.'s Rep. Br. at 4.) However, she cites no authority requiring the ALJ to adopt the findings of such an examiner. In any event, as discussed later in the text, Dr. Stevanovic made no specific findings here. Therefore, even if the ALJ erred in failing to more fully explain his assessment of this report the error was harmless. See Schomas v. Colvin, 732 F.3d 702, 707 (7th Cir. 2013).

give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions."). Plaintiff contends that "it is simply indisputable" that Dr. Stevanovic's opinion described a lifting capacity for less than 10 pounds (Pl.'s Br. at 16), but nothing in the report says that.[14] Plaintiff further contends that Dr. Stevanovic's report supports some limitation in "handling objects," but she does not say what those limitations might be. (Pl.'s Br. at 16.) As the ALJ noted, Dr. Stevanovic's exam revealed no problems with plaintiff's hands. (Tr. at 25, 329.) The ALJ acknowledged that plaintiff had trouble raising her left arm during the consultative exam, but subsequent records showed that she regained full range of motion. (Tr. at 26, 329, 449.) To the extent that plaintiff suggests Dr. Stevanovic may have endorsed other non-exertional limitations (Pl.'s Br. at 15), she again fails to explain what those limitations are.

Plaintiff ultimately concedes that Dr. Stevanovic's opinion could have been clearer but contends that this should have triggered the ALJ's duty to further develop the record: re-contacting the consultant, requesting additional records, scheduling another exam, or summoning a medical expert to testify. (Pl.'s Br. at 16-18.) However, a reviewing court will generally uphold the ALJ's reasoned judgment on how much evidence to gather. Nelms v. Astrue, 553 F.3d 1093, 1098 (7th Cir. 2009). Importantly, plaintiff, who has been represented throughout the proceedings, made no request at the administrative level for further record development. See Poyck v. Astrue, 414 Fed. Appx. 859, 861 (7th Cir. 2011) ("Particularly in counseled cases, the burden is on the claimant to introduce some objective evidence that further development of the record is required."). Further, the ALJ specifically noted that Drs.

---

[14]In reply, plaintiff withdraws this unsupported claim. (Pl.'s Rep. Br. at 4.)

Medina and Chan were able to review Dr. Stevanovic's report, taking his findings into account in setting forth their specific opinions on what plaintiff could still do.[15] (Tr. at 26.) Plaintiff makes no argument that the ALJ erred in relying on the opinion of Dr. Chan, also an expert in social security disability evaluation. See <u>Flener v. Barnhart</u>, 361 F.3d 442, 448 (7th Cir. 2004).

## C.    Symptom Evaluation

In evaluating the credibility of a claimant's statements regarding her symptoms, the ALJ must first determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, 2016 SSR LEXIS 4, at *5; SSR 96-7p, 1996 SSR LEXIS 4, at *5. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. SSR 16-3p, 2016 SSR LEXIS 4, at *9; SSR 96-7p, 1996 SSR LEXIS 4, at *5-6. If the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities, factors that precipitate and aggravate the symptoms, and the treatment she has received for relief of the pain or other symptoms.[16] SSR 16-3p,

---

[15]In reply, plaintiff contends that the ALJ failed to seek clarification of Dr. Stevanovic's "moderate" limitations (Pl.'s Rep. Br. at 4), but the ALJ relied on the report from Dr. Chan, who reviewed Dr. Stevanovic's findings, and concluded that plaintiff could perform light work. Plaintiff fails to show that the ALJ erred by failing to seek further clarification.

[16]SSR 16-3p went into effect on March 28, 2016, three days after the ALJ's decision, replacing SSR 96-7p. The new Ruling eliminates use of the term "credibility" and clarifies that "subjective symptom evaluation is not an examination of an individual's character." 2016 SSR LEXIS 4, at *1. The Seventh Circuit has explained that this "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain <u>assertions</u> by applicants, especially as such assertions often cannot be either credited or rejected on the

2016 SSR LEXIS 4, at *18-19; SSR 96-7p, 1996 SSR LEXIS 4, at *8. The court reviews an ALJ's credibility finding deferentially, reversing only if it "patently wrong." Summers, 864 F.3d at 528.

The ALJ followed the required two-step process here, finding that while plaintiff's impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (Tr. at 24.) In support of this finding, he cited the objective medical evidence, which contained unimpressive findings; her conservative treatment, mainly medications; the physical exams, which revealed functional gait, good strength, and full range of motion; and her daily activities, which suggested the capacity for light work. (Tr. at 25-26.)

Plaintiff's sole attack on the ALJ's credibility determination is that he allegedly failed to consider her exemplary work history. (Pl.'s Br. at 18-21.) The Seventh Circuit has noted that while an ALJ is not statutorily required to consider a claimant's work history, a claimant with a good work record "is entitled to substantial credibility when claiming an inability to work because of a disability." Stark v. Colvin, 813 F.3d 684, 689 (7th Cir. 2016) (internal quote marks omitted). The court of appeals has further explained that failure to explicitly discuss this factor is not per se reversible error, as "it is still just one factor among many, and it is not dispositive." Summers, 864 F.3d at 529 (internal quote marks omitted).

In the present, contrary to plaintiff's contention, the ALJ did discuss her work record, stating: "The claimant had an impressive work history that showed 17 years of substantial gainful activity from 1994 through 2011. The claimant testified that she left her job because

_____

basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016). SSR 16-3p requires use of the same two-step test and consideration of the same factors at SSR 96-7p.

her boss wanted to add additional responsibilities, not because she was unable to perform her already existing job requirements." (Tr. at 25, emphasis in original.) In her response brief, the Commissioner notes the ALJ's discussion of plaintiff's work history (Def.'s Br. at 14), but plaintiff does not address the issue in reply. Nor does she challenge the other factors cited by the ALJ in support of his credibility finding.

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is affirmed, and this case is dismissed. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 18th day of May, 2018.

/s Lynn Adelman
LYNN ADELMAN
District Judge